UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **DAYBREAK EXPRESS, INC.,** | ) | |
| **Plaintiff,** | ) | Civil Action No.: |
| | ) | |
| v. | ) | **COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF CONTRACT OF INSURANCE** |
| **THE CHARTER OAK FIRE INSURANCE COMPANY and its underwriting issuing company, THE TRAVELERS COMPANIES, INC.** | ) ) ) ) | |
| **Defendant.** | ) | |
| | ) | |

Plaintiff, Daybreak Express, Inc., having a place of business in the City of Newark, County of Essex, State of Jersey says:

## NATURE OF ACTION

1. Plaintiff *Daybreak Express, Inc.*, (hereinafter Plaintiff or "Daybreak") brings this Complaint for Declaratory Judgment pursuant to *28 U.S.C § § 2201, et seq*. and *Rule 57 of the Federal Rules of Civil Procedure*, seeking a declaration with respect to Defendant *The Charter Oak Fire Insurance Company and its underwriting issuing company, The, Travelers Companies, Inc.'s, (*hereinafter Collectively Defendant or "Travelers*")* duty to defend and indemnify it under Traveler's issued policy no. QT-660-6H155267-COF-21 (hereinafter "Policy").

2. There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the issued Policy. Travelers contends that there is no obligation to defend or indemnify Daybreak.

3. Daybreak has no adequate remedy at law and, therefore, desires a judicial determination of its rights and remedies in accordance with the Traveler's Policy. A judicial declaration is necessary and appropriate at this time so that Daybreak may ascertain its rights and remedies with respect to its entitlement to a defense and indemnity under the Traveler's Policy.

4. Jurisdiction over this matter is appropriate pursuant to *28 U.S.C. § 1332(a),* as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs and is between citizens of different states.

5. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 (b)(2), in that Plaintiff has an office for doing business in this district and, a substantial part of the events giving rise to this claim occurred in this district.

## THE PARTIES

6. "Daybreak" is a New Jersey corporation. Its principal business office is located at 500 Avenue P, Newark, New Jersey.

7. At all relevant times, defendant "Travelers" is a corporation organized and existing under the laws of the State of Minnesota with Corporate offices located at One Tower Square, Hartford Connecticut.

8. At all relevant times, Travelers is an American insurance company (which includes The Charter Oak Fire Insurance Company) that writes commercial inland Marine and property casualty insurance using independent agents throughout the United States. It is authorized to sell insurance policies in New Jersey by the New Jersey Department of Banking and Insurance.

## THE INSURANCE POLICY

9. At all times mentioned, Travelers issued through *Glatfelter Agency Inc.*, (hereinafter "Glatfelter") the Policy to Daybreak for the policy period October 1, 2021, to October 1, 2022. The Policy is attached hereto as **Exhibit A.**

10. The Policy provided liability and extended coverage for any damage or accident arising out of the ownership, operation, and maintenance of the plaintiff's transportation business.

11. Relevant to this matter at bar is an endorsement section in the Policy entitled **"Temperature, spoilage and Breakdown Coverage Changes."** It provides, in pertinent part, as follows:

\*\*\*

B. The following is added to Section B- Exclusions

We will not pay for loss or damage caused directly or indirectly by any of the following:

\*\*\*

c. Breakdown or failure of temperature control equipment.

\*\*\*

The paragraph goes on to state: **"This exclusion does not apply to the extent coverage is provided under Paragraph C of this endorsement."** (Emphasis Added)

\*\*\*

Paragraph C of the endorsement provides:

    C.  **Sudden and accidental mechanical or electrical breakdown to temperature control equipment is added as a Covered Cause of Loss** to Covered Property as described below if a Limit of Insurance is shown for such property in the Schedule above. (Emphasis Added).

    \*\*\*

12. Plaintiff had $500,000 per occurrence coverage in or on a covered conveyance in that Schedule. (A true copy of the Endorsement is attached within **Exhibit A**).

13. It is not disputed that five separate and independent losses were determined to have occurred over the course of approximately three months on a covered conveyance in the schedule: to wit; five involved refer containers and portable gen sets used by Daybreak in transportation of cargo by Daybreak did not maintain the required temperature in Interstate commerce.

## COUNT 1
### Declaratory Judgment
### Temperature, spoilage and Breakdown Coverage Exclusion

14. At all relevant times, the plaintiff is and was engaged in the inland transportation of goods and commodities as an Interstate and Intrastate carrier for hire.

15. On or about October 1, 2021, the plaintiff requested that *Glatfelter* obtain for it an insurance policy to provide liability and extended coverage for any damages or accidents arising out of the ownership and operation of the plaintiff's transportation business.

16.     At all times relevant, Daybreak has had a long-standing transportation relationship with its customer, *Becton Dickinson U.S.A.* (hereinafter "BD"). As such it yearly transports many shipments on behalf of BD without incident or claim events.

17.     Particular to this claim and despite its many other shipments for BD without incident, Daybreak in about July, August and September 2022, was engaged by BD to transport five separate and independent refrigerated containers of pharmaceutical goods from BD's facility located in Sparks (Baltimore) Maryland. In this instance each were to be delivered by Daybreak to Maher Terminals in Newark New Jersey for ultimate export by BD to itself in Belgium by ocean carriers.

18.     These inland transportations by Plaintiff on behalf of BD took place on 07/05/2022, 07/18/2022, 08/01/2022, 08/22/2022 and 09/12/2022.

19.     A specific temperature was required by BD to be maintained at all times during the transportation of the five refrigerated containers. It was +4.4 C. (39.9F).

20.     The five refrigerated containers, used by Daybreak to transport BD's pharmaceutical goods, were supplied with electrical power from portable gen sets attached to each refrigerated container. Each refrigerated container and portable gen-set was obtained by BD from Mediterranean Shipping Company (hereinafter "MSC). The portable units were only used for the inland transportation by Daybreak, until delivery was made by it at Maher Terminals. The refer containers for BD traveled by ocean carrier from Maher Terminals in Newark New Jersey to BD in Belgium.

21.     Upon loading of its pharmaceutical goods into each of the refrigerated containers, BD set each container to a temperature of +4.4C and placed Ryan Recorders inside each refrigerated container to monitor the temperatures during not only Daybreak's inland carriage of

BD's goods to Maher Terminals, but for the international ocean transportation to itself in Belgium.

22.     Upon delivery in Belgium, the Ryan Recorder charts were checked by BD, and it was noticed that the temperatures had fluctuated to as high as +25C to 35.2C in all five refrigerated containers while in Daybreak's control and before it delivered each refrigerated container to Maher Terminals. The temperature was otherwise noted on the charts to be properly maintained from Maher Terminal to delivery to BD in Belgium.

23.     Due to the temperature fluctuation, BD rejected all five shipments in each of the five refrigerated containers and made five separate claims against Daybreak for the value of its five shipments.  Each claim was based on the temperature charts from the Ryan Recorders.

24.     In turn Daybreak made five separate claims for indemnity from Travelers for the BD claims under the Policy issued for Travelers by Glatfelter.

25.     Travelers, in response, initially issued five reservations of rights letters pending its investigation of all five independent losses.

26.     One of the bases for reserving its rights on all five claims was its exclusion endorsement in the Policy as to "Temperature, spoilage and Breakdown Coverage Changes."

27.     In addition to having the temperature chart log reports that demonstrated the sudden fluctuation in temperature in each of the five refrigerated containers (copies of which are attached hereto as **Exhibit B)**, Plaintiff retained an expert, Captain Shiv Prakash of American Marine Corporation, to investigate the cause for each of the five independent losses.

28.     He studied the temperature chart Log reports and noted that the temperatures fluctuated fairly sharply from 4.4C to about +22 to 35.2C.  He noted that the temperature curves were straight up not in a slight or moderate curve. He therefore concluded the fluctuation in

temperature was sudden in each of the five containers and were either caused because of a malfunction of the MSC gen sets obtained by BD or a malfunction of the MSC Container Reefer machinery.

29. He further observed that the MSC Container Reefer machinery operated normally, because the temperatures were maintained steady at about the set temperature of +4.4C in all five refrigerated containers after they were dropped off by Daybreak at Maher Terminals and plugged into the power source at Maher Terminals.

30. The temperatures were also maintained steady at about the set temperature of +4.4C in all five MSC refrigerated containers during the ocean vessels' carriage and delivery in Belgium.

31. He therefore concluded that the MSC refrigerated containers did not malfunction, and that the sudden fluctuation in temperature in all five refrigerated containers was caused by a sudden electrical or mechanical breakdown in the five MSC portable gen sets during Daybreaks inland transportation of the subject BD goods.

32. Despite this conclusion and supporting facts and findings, Travelers denied all five claims in five separate and independent declination letters all dated September 15, 2023.

33. The basis for each denial of each claim was, in essence, as follows:
 "The Log Tag reports are not evidence of a sudden and accidental mechanical or electrical breakdown to temperature control equipment…The Charter Oak Fire Insurance Company (Traveler's) is unable to provide coverage."

34. Plaintiff's expert report and opinion was not addressed in the Traveler's declination letters. The conclusions of the plaintiff's expert therefore went unrefuted. The conclusion reached by Traveler's and the denials of coverage are both arbitrary, self-serving, and

without substantiation. There is no reasonable basis for its denial of coverage on each independent claim.

35. The plaintiff has complied with all the terms and conditions requisite to coverage being afforded to it by the Policy.

36. Defendant Traveler's has been timely called upon to assume its responsibility under the Policy, and it has refused to comply with this demand.

37. The failure of defendant Traveler's to comply with the terms of the Policy issued to the plaintiff has caused and will cause the plaintiff to be put to great expense and financial loss unless this Court, by its declaratory judgment, declares the rights of the plaintiff under the policy.

WHEREFORE, the plaintiff demands that a declaratory judgment be made and entered herein:

(a) Acknowledging that defendant Traveler's is obligated under its insurance policy described above to defend and indemnify Plaintiff;

(b) Acknowledging that the claims for damages asserted against the Plaintiff in Becton Dickinson's claims are covered by the policy issued by Traveler's to Plaintiff;

(c) Obligating defendant Traveler's, under its insurance policy, to either pay Becton Dickinson claims within the limits of its policy or indemnify Plaintiff for having independently done so; and

(d) Awarding the Plaintiff attorneys' fees, costs, and disbursements of this action as well as such other and further relief as may be just and proper to this Honorable Court.

PRICE, MEESE, SHULMAN & D'ARMINIO, P.C.
50 Tice Boulevard
Suite 380
Woodcliff Lake, New Jersey 07677
T (201) 391-3737
F (201) 391-9360
Attorneys for Plaintiff,
Daybreak Express, Inc.

By: /S/ William D. Bierman
     William D. Bierman, Esq.

By: /S/ Richard M. Fricke
     Richard M. Fricke, Esq.

Dated: December 14, 2023